IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Sandra L. Ortiz<br>  Plaintiff,<br><br>v.<br><br>City of Houston,<br>  Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CASE No. 19-2488<br><br><br>JURY TRIAL DEMANDED |

## **PLAINTIFF'S COMPLAINT**

TO THE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Sandra L. Ortiz ("Ortiz"), and files this Complaint, complaining of the City of Houston, Texas (Defendant or "the City") and for her causes of action, shows the Court as follows:

## I.
## INTRODUCTION

1. The Houston Fire Department has a long and sorry history of discriminating against women in its workplace. In fact, the United States has filed suit on behalf of two female firefighters in a case currently pending in this district, *United States of America v. City of Houston*, 4:18-cv-0064. The instant case presents yet another instance of persistent harassment and discrimination by the fire department against its female officers. In this case, the fire department systematically discriminated against Ortiz by depriving her of valuable overtime assignments in favor of giving those assignments to male employees. When Ms. Ortiz tried to address these concerns, she was subject to an all too common pattern of retaliation and abuse at the hands of her male superiors.

## II.
## JURISDICTION AND VENUE

2. This is a civil action over which this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3) and (4).

3. Plaintiff resides within the and is employed by defendant within this district and the acts alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division. Therefore, venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b).

## III.
## PROCEDURAL REQUISITES

4. On February 22, 2018, Plaintiff filed a complaint with U.S. Equal Employment Opportunity Commission, which was subsequently amended on June 7, 2018 and February, 27, 2019.

5. On April 11, 2019, the EEOC issued its Dismissal and Notice of Rights letter to Ortiz. This lawsuit is filed within 90 days of the receipt of that letter.

## IV.
## PARTIES

6. Defendant is a government body created pursuant to the laws of the State of Texas and is located within this judicial district.

7. Defendant maintains the Houston Fire Department ("HFD") which employs uniformed fire fighters.

8. Plaintiff Sandra Ortiz is a current employee of the Houston Fire Department and is a resident of Harris County Texas.

V.
**FACTS**

9. Plaintiff Ortiz first came to work for the Houston Fire department on May 14, 1990 as a civilian employee. At that time she was a 21. In October 1993 she joined the fire department as a Firefighter. Then in 2005 she qualified to take the Fire Inspector promotional exam, however, the city delayed in offering the exam until 2006. Ortiz took and passed the exam, ultimately becoming a City Fire Inspector, a role she has remained in until today.

10. In the fire department, Fire inspectors are paid overtime when they work more than 40 hours a week. These overtime assignments are not randomly assigned. Instead, there is supposed to be a fair system in place to insure a relatively equal number of overtime hours worked by similarly situated employees. Due to the failure by the City to give the Inspector exam accordingly, Ortiz missed two years of overtime pay. Ortiz did not start working overtime until 2007 even though her seniority date is dated November 2005. Ortiz only received backpay for the difference in basic salary but missed the overtime pay she could have worked had the city given the test timely. Ortiz also began to notice that she seemed to receive fewer overtime hours than her male peers.

A. **Ortiz reports discrimination, harassment and unfair pay, and is subject to persistent retaliation and abuse**

11. On May, 2, 2017, Ortiz met with fire Chief Sam Pena, and discussed her concerns over the mishandling of overtime assignments. Ortiz pointed out that in practice, the assignments were being awarded disproportionally to male inspectors, and that even among the men, there appeared to be distinct favoritism in the assignments, and that all of this was contrary to Fire Department Policy. During this meeting Pena assured Ortiz that a civilian employee would be given oversight over the overtime assignments to prevent future abuses. However, this did not

happen.

12. During this same meeting Ortiz discussed the ongoing sexual harassment she was facing at the hands of Deputy Chief John Valenti, she explained that Valenti would frequently ask Ortiz out on dates, despite Ortiz being married and having turned him down repeatedly. Ortiz asked if Pena would start an investigation into these allegations, but one never began.

13. Instead, shortly after reporting to Pena, Ortiz began experiencing consistent and pernicious harassment at the hands of Valenti, Chief Bobby George, Sr., Inspector Larry Roberts, and Sr. Inspector Sam Mandola. For example, Ortiz was ordered to report to Roberts every time she left her desk, for whatever reason, a condition placed solely on her. Roberts would harass Ortiz by calling her on her cell phone whenever Ortiz would go to use the restroom, or speak with a customer, or go on lunch. She was the only firefighter subject to this harassment.

14. In another example of discrimination, Ortiz was ordered by George to provide evidence and list codes references on all inspections she did not approve, this additional paperwork, was not a job requirement, and male inspectors were not required to provide these materials. George would also regularly send group emails condescending and belittling Ortiz to all male Inspectors. In yet another example of discrimination, Ortiz was routinely ordered to do the duties of the plan checking team, more paperwork which was not required of the male inspectors.

15. George would constantly harass Ortiz via email, demanding information on unreasonable time frames, and regularly pretending like Ortiz had not responded, when in fact she had. In one notable example, George emailed Ortiz at 8 pm, while Ortiz was out on bereavement leave asking for information immediately. The piece of information was trivial and in no way impeded or prevented a contractor or customer receiving his/her permits.

16. Others systematically discriminated against Ortiz in different ways, for example, on most occasions where Ortiz would be assigned overtime, Roberts & Mandola ensured that the assignments were located as far from Ortiz as possible, some as far as over 35 miles away. The intent was that Ortiz would not arrive on time or miss the assignment—events that would give them "cause" to remove her from the overtime list. In at least one instance, Ortiz was written up for allegedly missing one of these remote overtime assignments. Although it is not true that she missed the assignment, she was credited for the overtime hours as if she had worked them but was not paid for them. This had the effect of moving her down the overtime list.

17. This harassment took many forms. One of the most common was that Ortiz would be written up factiously, for things she did not do, or things that were not against policy. For example, she was written up five times by George over a period of two days in September of 2017. These write ups were for (1) missing an overtime assignment—which did not happen, (2) arriving late after hours—there is no late policy for afterhours arrival time and Ortiz was purposely sent this location to force her to be late, (3) not responding promptly enough to emails—again no policy.

18. In one memorable incident around this same time, Ortiz raised the overtime issue with Valenti, who suggested that he would give her all his overtime locations, which he said are closer to her new office location and nearer Valenti's residence, if she would go out on a date with him. Ortiz just walked away.

19. On October 16, Ortiz, trying to stop the ongoing harassment, contacted Chief Michelle McLeod to meet with her about the sexual harassment. McLeod would only agree to the meeting if Valenti was present. Fearful of further pushback against her, Ortiz cancelled the meeting.

20. Then on October 19, 2017, Ortiz again met with Chief Pena, this time along with Assistant Chief Richard Mann. Ortiz reported the harassment that she had experienced since her May meeting, and once again asked for an investigation into these incidents. However, no investigation was ever carried out.

21. On October 24, realizing nothing was being done; Ortiz filed a grievance against Valenti through the Firefighters Union. Again, she was subject to discrimination based on being a female. Valenti stated that he had ordered Roberts, George, and Mandola to assign her less overtime than she was entitled to under department policy.

22. After this grievance things got worse. On November 1, 2017, Ortiz was notified of a mysterious meeting the following day, November 2, 2017. Ortiz asked the reason for the meeting, and her supervisors refused to tell her what the meeting was about. When she arrived, Ortiz again asked about reason or topic of meeting, her supervisors refused to answer and instead when Valenti arrived along with two civilian employees, Ortiz was ordered to park her vehicle behind Valenti's vehicle and was informed that a GPS was going to be installed on her car. This was done as part of a campaign to track her whereabouts and to manufacture a reason to terminate or demote Ortiz. However, due to the GPS being damaged once removed from Valenti's vehicle, they failed to install the GPS on her car on that day. Later, in 2018, Ortiz would learn from Chief Harold McDonald that Valenti wanted to install the GPS because Ortiz was "trouble" and a "problem child," McDonald would volunteer that it seemed to him like Valenti was "out to get her."

23. The stress of constant harassment at work took its toll on Ortiz physically and mentally. Ortiz was hospitalized for four days directly after the November 2, 2017 incident above, and has remained under a doctor's care ever since due to ongoing psychological trauma

caused by the abuse.

24. Ortiz's doctor requested that Ortiz be reassigned away from her abusers, but this request was denied by the fire department. Instead, no real changes were made, and Ortiz continued to be discriminated against by her superiors.

**B. Ortiz files her charge of discrimination, and things get worse.**

25. On February of 2018, after the fire department had done nothing to address her concerns, Ortiz filed her charge of discrimination with the EEOC. In response to this complaint the City was required to file a response. It did so in May of 2018, merely indicating that it would "look into" the allegations. Shortly thereafter, efforts to harass and abuse Ortiz redoubled.

26. In November of 2018, Ortiz was written up for an incident that had occurred more than a year before, in September of 2017. In that incident George had assigned Ortiz to an overtime assignment that was 31 miles from where she was working. This was done intentionally to ensure that Ortiz could not arrive timely complete the assignment, and in direct contradiction to policy which prioritizes overtime assignments in the same geographic area as the employee home vehicle storage location. Ortiz failed to arrive to the assignment on time, something that would have been impossible due to the distance and rush hour traffic. Now more than a year after the incident, but a short two months before the City would issue its formal response to Ortiz's charge of discrimination, she was inexplicably written up for this incident for the second time.

27. Again, in November of 2018, Ortiz was written up. She was required to attend a counseling session with Chief Ruben Hernandez, Eugene Thomas, and Michael Hull, this time she was told that she had failed to follow a direct order from Chief George, this was again untrue.

**C. Ortiz has been subject to constant underpayment because she is a woman.**

28. Ortiz has been systematically discriminated against in the prioritization of overtime assignments for years. For example, from January 1, 2018 through May 22, 2018, Ortiz ranked the number of overtime hours worked by her and similarly situated male inspectors. She determined that 82% of the male inspectors accrued more overtime during that period than she had. Given that Ortiz was actively pursuing as much overtime as possible during this period, Ortiz should have been able to achieve something like an average amount of overtime. For example, Ortiz was off on FMLA from November 2017 thru about March 2018, when Ortiz requested to be placed on the overtime assignment list she was denied by her superiors. When she asked the reason, she was then told that she would have to be retrained. Then she was told she would be placed "at the bottom" of the list even though she had zero hours of overtime. When she requested for a copy of the said policy the supervisors were quoting, the supervisors told her to look it up herself, Ortiz eventually contacted fire chief Sam Pena. Chief Pena said he would look into it and then sent Ortiz a copy of a supposed policy that was not the current policy in effect. Ortiz was eventually allowed to work overtime but not until she contacted the fire chief and explained her protected status under FMLA.

29. Another incident of the unfair overtime, Ortiz had a meeting with Executive Chief Richard Mann, Fire Marshal Michelle McLeod and Chief Inspector Marion Spann. In this meeting Mann informed Ortiz that he was re-assigning her to the stand-by overtime list instead of the plan checking overtime list. This Mann stated in an effort to keep Ortiz away from Bobby George. Ortiz refused and stated that it made no sense since George is the supervisor over both overtime lists. The standby overtime list is known to work less hours of overtime. Only after Ortiz informed him that she felt she was being punished for coming forward with her allegations, she was reluctantly allowed to remain on the after-hours overtime list.

30. These and other incidents, present a clear pattern of using overtime assignments to discriminate against Ortiz, and retaliate against her for reporting concerns relating to overtime or unequal pay.

## VI.
## CAUSES OF ACTION

### COUNT I
### Equal Pay Act
### (The Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S.C. §§ 206 et seq.)

31. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

32. The city has discriminated against Plaintiff in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206 et seq., as amended by the Equal Pay Act of 1963 ("EPA").

33. The City has paid Ortiz less than similarly situated male employees performing equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions.

34. The differential in pay between Plaintiff and similarly situated male employees was and is not due to any bona fide seniority, merit or inventive system or any other factor than sex, but was because of gender.

35. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

36. As a result of the City's gender-based discriminatory practices as described above, Ortiz has suffered damages including but not limited to, lost past and future income, compensation and benefits.

## COUNT II
### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment - Sex

37. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

38. Ortiz was subject to unwarranted sexual harassment at the hands of Valenti and others. The harassment took the forms outlined above, including but not limited to asking her out of dates, attempting to place a GPS tracking device on her car, and requiring her to do work not expected of other fire inspectors.

39. The harassment was severe and pervasive and thereby affected a term, condition or privilege of her employment and created and abusive work environment.

40. Furthermore, the City failed to adequately investigate Plaintiff's complaints of harassment as detailed above, including ignoring several requests by Plaintiff to conduct an investigation.

41. Management level employees up to and including the fire chief, were aware of the harassment Ortiz was suffering and did nothing to address it.

42. As a result of this sexual harassment and the City's failure to investigate it, Plaintiff has suffered and will continue to suffer severe economic, and emotional injuries.

## COUNT III
### Title VII, 42 U.S.C. § 2000e-39(a)
### Retaliation

43. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

44. Ortiz engaged in protective activity, among other ways, when she reported her concerns to Chief Pena, and when she filed her charge of discrimination with the EEOC.

45. HFD, including Chief Pena, Valenti, George and others were aware of Ortiz complains.

46. As detailed above, Ortiz began experience harassment as soon as she complained, and as she escalated her complaints, the harassment she suffered only intensified.

47. Furthermore, also as detailed above, other actions were taken to retaliate against Ortiz, including but not limited to depriving her of overtime.

48. These actions were taken against Ortiz because of her complaints, and the few alleged performance issues brought up by her harassers were mere pretext, and in fact formed part of the harassment she endured.

49. As a result of this retaliation, Plaintiff has suffered and will continue to suffer severe economic, and emotional injuries.

## COUNT IV
### Title VII, 42 U.S.C. § 2000e-2(a)
### Discrimination – Sex

50. Plaintiff re-alleges and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

51. Plaintiff was discriminated against on the basis of sex, in the ways outlined above, including but not limited to, denying her overtime assignments, and requiring her to do additional job duties. These actions deprived Ortiz of equal employment opportunities and otherwise adversely affected her status as an employee because of her sex.

52. As a result of this sex-based discrimination Plaintiff has suffered and will continue to suffer severe economic, and emotional injuries.

## IX.
## DAMAGES

53. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully rewritten herein.

54. Ortiz seeks all available damages from Defendant that are allowed under the relevant statutes and common law causes of action.

55. Ortiz also seeks economic losses for the lost wages and benefits suffered by her as a result of Defendant's conduct, both in the past and in the future.

56. Ortiz also demands attorney's fees pursuant to title VII.

## X.
## JURY DEMAND

57. Ortiz requests a trial by jury on all issues triable by a jury in this case.

## XI.
## RELIEF REQUESTED

58. Ortiz respectfully prays that she be granted judgment for the following relief:

   a. For actual and compensatory damages for the period of time provided by law, including appropriate backpay or other compensation, and reimbursement for lost pension, insurance, and all other benefits;

   b. For compensatory damages and other damages as allowed by law;

   c. For attorneys' fees;

   d. For expert witness fees incurred in the preparation and prosecution of this action;

   e. For pre-judgment and post-judgment interest as allowed by law;

   f. For costs of court, costs of prosecuting this claim; and,

   g. For such other and further relief to which Ortiz may be entitled under the relevant statutes or justly entitled.

**WHEREFORE, PREMISES CONSIDERED**, Ortiz prays that after trial by jury she be awarded the relief requested above, and any other such further relief whether at law or in equity to which she may show herself justly entitled.

Respectfully submitted,

**Foster Salisbury PLLC**

 /s/ Benjamin F. Foster
Benjamin F. Foster
405 Main Street, Suite 722
Houston, Texas 77002
Tel: (713) 331-5254
ben@fsfirm.com

**ATTORNEY FOR PLAINTIFF**
